UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EDWARD T.,

                                          **Plaintiff,**

    vs.                                                      1:18-cv-01482 (MAD)

**ANDREW SAUL,**
*Commissioner of Social Security,*

                                          **Defendant.**
_____

APPEARANCES:                                OF COUNSEL:

**OFFICE OF STEPHEN J. MASTAITIS**      **STEPHEN J. MASTAITIS, JR., ESQ.**
150 Franklin Beach Road
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **KRISTINA D. COHN, ESQ.**
Office of the General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    On June 17, 2016, Plaintiff Edward T. filed an application for Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 8, Administrative Transcript ("Tr.") at 230. On September 16, 2016, Plaintiff's claims were initially denied. *Id.* at 160–71. Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on January 26, 2018. *See id.* at 40. Plaintiff made a request to review the

unfavorable decision, and on October 25, 2018, the Appeals Council affirmed the ALJ's decision. *See id.* at 5.

Plaintiff commenced this action under 42 U.S.C. § 405(g) seeking review of the Commissioner's unfavorable decision. Currently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 12, 13.

## II. BACKGROUND

Plaintiff's date of birth is November 5, 1977, which made him nearly thirty-eight years old at the time he protectively re-filed for DIB on June 17, 2016. *See* Tr. at 27. Plaintiff completed his formal education at twelfth grade and received his high school diploma. *See id.* at 63. Plaintiff testified that he was placed in special education classes. *See id.* at 63–64. Plaintiff testified that he is weak in math, but is able to do basic math calculations with the use of a calculator. *See id.* at 64. Household finances are left to Plaintiff's fiancee. *See id.* Plaintiff has not completed any vocational training. *See id.* at 110. He hoped to enroll in the Marine Corps when he was eighteen years old, but he was honorably discharged due to "heart issues" and could not pass the required physicals. *Id.* at 65.

For the years 2011 and 2012, Plaintiff worked full-time at Lowe's Home Improvement as an overnight stocker, cashier, and salesperson, as well as at Advanced Auto Parts. *See id.* at 65–66, 110. Plaintiff previously worked at Draper Development for one year; prior to that, he worked at Quick Way as a store manager of a gas station from 2008 to 2009. *See id.* at 66. Plaintiff described having a high level of responsibility as a store manager at Quick Way. *See id.* In 2007, Plaintiff worked for V&J Employment Services as a cleaner through the Hannaford Company. *See id.* at 68–69. He also worked for a few months at a Grand Union supermarket and Subway. *See id.* at 69.

Plaintiff is the father of seven children. *See id.* at 59. His two youngest daughters were minors and residing with Plaintiff and his fiancee at the time of the hearing; his other minor children and adult children live elsewhere. *See id.* He was receiving Medicaid and food stamps at the time of the hearing. *See id.* at 60. Plaintiff's fiancee worked two full-time jobs at the time of the hearing. *See id.* at 60–61. Plaintiff indicated that he drives a car only in emergency situations for approximately twenty minutes at a time, and that a specialist wanted to pull his license. *See id.* at 61–62. Plaintiff stated he could not perform many household chores, which resulted in New York State providing childcare assistance seven days a week starting in 2012. *See id.* at 79–80.

Plaintiff described searching for employment from July 9, 2012 until 2016, but "gave up because all the jobs are saying well doctors won't clear you, the medications, my limitations . . . ." *Id.* at 70. Plaintiff has not been employed since January 30, 2015, which is also the claimed onset date of disability. *See id.*

Plaintiff's medical history indicates his past surgical history involves "[c]omplex facial and ENT surgery for relief of sleep apnea, elbow surgery, hernia repair." *Id.* at 572. At Plaintiff's hearing, he described having a back injury that prevented him from lifting heavy items. *See id.* at 71–72. The inability to lift is further exacerbated by pain in his shoulder and knee injuries. *See id.* at 71. He further described that he has blackouts and seizures as a result of his narcolepsy, and the medication he takes to prevent them consistently makes him feel lethargic. *See id.* at 71–72. At the time of the hearing, Plaintiff stated that he took medication for blood pressure, anxiety, allergies, multiple sleeping medications (including a sedative), aspirin, an anti-inflammatory at times, and used a CPAP machine and a TENS unit for back swelling. *See id.* at 72–74. As a result of his impairments, Plaintiff claims that he is unable to lift and carry more than five pounds, and can do so only once or twice a day. *See id.* at 75. Plaintiff claimed that the time he can be

3

seated varies based on these impairments because of potential blackouts. *See id.* Plaintiff described that, prior to his various diagnoses, he assumed his symptoms were because of overexertion. *See id.* at 82–83. Plaintiff described losing various jobs because of these impairments. *See id.* at 83–84.

Plaintiff stated that his blackouts may prevent him from breathing, and have caused hallucinations. *See id.* at 77. Plaintiff described these blackouts taking place approximately two or three times a day, and can last from a matter of minutes up to forty-five minutes. *See id.* at 78. Plaintiff sleeps approximately two hours per evening. *See id.* at 85. Plaintiff does not claim to have any hobbies besides watching television, listening to music, or interacting with his children because of his impairments. *See id.* at 80.

In a decision dated January 26, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 24–40. Plaintiff timely filed a request for review by the Appeals Council, *see id.* at 227–29, and the Appeals Council denied his request for review rendering the ALJ's decision the Commissioner's final decision. *See id.* at 5–8. In his decision, the ALJ found the following: (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016; (2) Plaintiff had not engaged in substantial gainful activity since January 30, 2015; (3) Plaintiff's severe impairments include sleep disorder/sleep apnea, REM behavioral sleep disorder, right shoulder impingement, patellofemoral disorder of the right knee, and obesity; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (5) Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with limitations to simple tasks without frequent changes in routine, and may be off task 5% of an eight-hour workday, with exceptions including frequently reaching with the right upper extremity,

no use of ladders, ropes, or scaffolds, no work on unprotected heights, no use of a motor vehicle, and avoidance of hazardous machinery; (6) Plaintiff's RFC renders him not capable of performing past relevant work; and (7) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See id.* at 29–39. Accordingly, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act. *See id.*

Plaintiff commenced this action for judicial review of the denial of his claims by the filing of a complaint on December 24, 2018. *See* Dkt. No. 1. The parties have moved for judgment on the pleadings. *See* Dkt. Nos. 12, 13.

## III. DISCUSSION

### A. Standard of Review

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted). "The claimant bears the burden of proof on

5

the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January, 30, 2015, the alleged onset date. *See* Tr. at 29. At step

two, the ALJ concluded that Plaintiff had the following severe impairments: sleep disorder/sleep apnea, REM behavioral sleep disorder, right shoulder impingement, patellofemoral disorder of the right knee, and obesity. *Id*. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 31. The ALJ then found that Plaintiff

> had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except, the claimant is able to frequently reach with the right upper extremity, never climb ladders, ropes or scaffolds or work on unprotected heights. The claimant is never able to use a motor vehicle for work purposes, and should avoid the use of hazardous machinery. The claimant is limited to a low stress work environment, defined as simple, routine, repetitive tasks, with rare changes in the work setting and basic work related decisions, and may be off task 5% of an 8-hour workday.

*Id*. at 32. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *Id*. at 38. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *See id*. at 39. The vocational expert testified that a hypothetical individual of Plaintiff's age, with his education, past relevant work experience, and RFC (as described above) could perform the representative occupations of cleaner, housekeeper, cashier, and marker/prices. *See id*. The ALJ relied on this testimony to determine that Plaintiff was not disabled as defined by the Social Security Act. *See id*.

C. **Analysis**

Plaintiff contends that the ALJ's determination denying his disability applications should be remanded back to the Commissioner for the following reasons: (1) Plaintiff met the criteria for a Listed Impairment under § 11.02 Epilepsy; (2) the ALJ did not consider the cumulative effect of Plaintiff's impairments; (3) the step-five determination is not supported by substantial evidence because the hypothetical the ALJ posed to the vocational expert was incomplete; and (4) the RFC

7

is not supported by substantial evidence because the treating physician rule was not properly applied and improper weight was assigned to a consultative examiner. *See* Dkt. No. 12 at 14–27.

### 1. *Plaintiff's Impairments*

Plaintiff argues that the ALJ erred at step three of the sequential evaluation. Plaintiff contends that his sleep disorders meet the criteria of Listing 11.02 (epilepsy), and that this demonstrates that he was unable to engage in substantial gainful activity. *See* Dkt. No. 12 at 12. Plaintiff argues that his sleep disorders met or medically equaled the criteria of Listing 11.02, and that Plaintiff satisfies the criteria for a presumption of disability under this Listing. *See id*. at 11–12. The Court finds this argument unpersuasive.

The Listing of Impairments, set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P, describes for each of the major body systems impairments that are considered severe enough to prevent an individual from performing any gainful activity, regardless of his or her age, education or work experience. In order to meet or equal Listing 11.02, Plaintiff had to show that he had epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:

> A. Generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or
>
> B. Dyscognitive seizures, occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; or
>
> C. Generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
>
>> 1. Physical functioning; or
>> 2. Understanding, remembering, or applying information; or
>> 3. Interacting with others; or

>       4. Concentrating, persisting, or maintaining pace; or
>       5. Adapting or managing oneself; or
>
>    D. Dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
>
>       1. Physical functioning; or
>       2. Understanding, remembering, or applying information; or
>       3. Interacting with others; or
>       4. Concentrating, persisting, or maintaining pace; or
>       5. Adapting or managing oneself.

Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 11.02 (internal citations omitted). Furthermore, limitations from this neurological disorder must "exist despite adherence to prescribed treatment. 'Despite adherence to prescribed treatment' means that" Plaintiff must "have taken medication(s) or followed other treatment procedures . . . as prescribed by a physician for three consecutive months but [the] impairment continues to meet the other listing requirements despite this treatment." Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 11.02. For a claimant to show that his impairment meets a Listing, the claimant must meet all of the specified medical criteria of that Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). An impairment that manifests some but not all of the Listing's criteria does not qualify. *See id*.

An ALJ need not "specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements." *Scuderi v. Comm'r of Soc. Sec.*, 302 Fed. Appx. 88, 90 (3d Cir. 2008). There may be "'an implied finding that a claimant does not meet a listing' . . . [The Court] may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing." *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 Fed. Appx. 673, 676 (11th Cir. 2015) (internal citation omitted).

While Plaintiff depends on the SSA's Program Operations Manual System ("POMS") as the reason to consider the comparison of narcolepsy to epilepsy, *see* Dkt. No. 12 at 11, the POMS manual is merely internal guidance, and is not intended to be relied upon to create any right enforceable by law. *See Binder & Binder PC v. Barnhart*, 481 F.3d 141, 151 (2d Cir. 2007) (internal citation and quotation omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) (holding that "POMS guidelines 'ha[ve] no legal force, and [they] do [] not bind the [Commissioner]'") (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)).

In the present matter, the ALJ considered Plaintiff's medical history. *See* Tr. at 29–38. Specifically, the ALJ found that "[t]he inconsistent information and histories provided by the claimant to his own treating physicians, as well as gaps in treatment, as noted above, further undermine his statements concerning the severity and persistents of his symptoms." Tr. at 38. Even if the ALJ did consider the POMS comparison with epilepsy, Plaintiff's symptoms would not have met the requirements of Listing 11.02. The record shows no evidence of seizures. The record does not demonstrate a marked limitation in physical functioning, with Dr. Puri stating that Plaintiff had no physical limitations other than mild postural limitations and a need to avoid heights, heavy machinery, and driving. *See id.* at 834. Furthermore, the record does not demonstrate a marked limitation in interacting with others, with examinations noting that Plaintiff was cooperative. *See id.* at 294, 309, 438, 581, 584, 631, 667, 674, 764, 770–71, 826. Moreover, the record does not demonstrate a marked limitation in Plaintiff's concentration, persistence, or maintenance of pace, with examinations demonstrating Plaintiff's full orientation and attention. *See id.* at 297, 309, 438, 581, 584, 631, 667, 674, 764, 770–71. Finally, the record does not demonstrate a marked limitation in Plaintiff's ability to adapt or manage himself, with Plaintiff reporting to physicians that he socialized, watched television, played video games, and cooked.

*See id.* at 430, 827. The ALJ evaluated these four areas (also known as the four areas of mental functioning) in detail. *See id.* at 30.

The ALJ indicates, and the record supports, that Plaintiff suffered from obstructive sleep apnea and possible REM sleep behavior disorder. *See* Tr. at 38. However, the ALJ's conclusion that "the medical evidence simply does not support the degree of limitations and impairment alleged by the claimant," and thus, does not meet the criteria for Listing 11.02, is supported by substantial evidence. *Id.*

### 2. *Combined Impact of Plaintiff's Impairments*

Plaintiff summarily alleges that the ALJ failed to consider the combined effect of Plaintiff's impairments, particularly focusing on his obesity, leading to an erroneous decision that Plaintiff is not impaired. *See* Dkt. No. 12 at 10. This argument is without merit.

The ALJ noted the effect of obesity on Plaintiff's evaluation. At step two, the ALJ found that obesity was a severe impairment. *See* Tr. at 29. At step three, the ALJ explicitly stated that an "individualized assessment should be performed on each claimant to determine the effects obesity has on physical and mental impairments," noting that "the combined effects with other impairments may be greater than might be expected without obesity." *Id.* at 31. The ALJ referenced Plaintiff's body mass index and weight fluctuation, as well as the negative impact it might have on his sleep disorder condition. *See id.* at 36. Nothing in the record indicates that Plaintiff's obesity prevented him from working, which supports the position that the ALJ properly considered Plaintiff's obesity. *See Westfall v. Colvin*, 137 F. Supp. 3d 340, 344 (W.D.N.Y. 2015). Thus, the Court finds that the ALJ properly considered the combined effect of Plaintiff's impairments when determining whether Plaintiff met the impairment threshold for the purposes of the Social Security Act.

### 3. Vocational expert

In his motion, Plaintiff contends that the ALJ's step five determination is unsupported by substantial evidence because a vocational expert testified in response to a faulty hypothetical question that did not include a sit/stand option or indicate that Plaintiff would be off task for more than 9% of the workday. *See* Dkt. No. 8 at 9; Tr. at 92–93. At the hearing, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. *See* Tr. at 95–98. The vocational expert testified that, given the above factors, Plaintiff would be able to perform the requirements of cleaner, housekeeper, cashier, and marker of prices. *Id.* The vocational expert also testified in response to various hypothetical questions from the ALJ, including as related to off-task time from work as well as sit/stand time. *See id.*

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre*, 758 F.3d at 151. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved[.]" *Id.* (internal quotation and other citation omitted).

In the present matter, the ALJ provided the vocational expert with Plaintiff's physical and mental abilities in posing his hypothetical question. *See* Tr. at 95–98. Using this information, the vocational expert indicated that Plaintiff would be suitable for a sedentary occupation and

provided considerable details regarding the available jobs in the nation. *See id.* Since there was substantial evidence in the record supporting the assumptions upon which the hypothetical question was based, the ALJ properly relied on the vocational expert's testimony in response to the hypothetical question. *See McIntyre*, 758 F.3d at 151–52. Even if the ALJ failed to incorporate all of Plaintiff's exertional limitations in the posed hypothetical questions, the Court finds that any such error was harmless. *See id.* at 152 (holding "that an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) 'medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace,' and the challenged hypothetical is limited 'to include only unskilled work'; or (2) the hypothetical 'otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace'") (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

Based on the foregoing, the Court finds that the ALJ properly relied on the vocational expert's opinion.

### *4. Weighing the Opinion Evidence*

Plaintiff objects to the manner in which the ALJ weighed the available medical opinions. *See* Dkt. No. 12 at 8–9. Specifically, Plaintiff alleges that the ALJ erroneously assigned greater weight to the opinions of a state agency consultant than the opinions of his treating physician. *See id*. The opinions at issue are those of Dr. Kautilya Puri ("Dr. Puri") and Dr. Siobhan Kuhar ("Dr. Kuhar"). *See id*. at 27–31.

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotation omitted). The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion is contradicted by other substantial evidence in the record, such as the opinions of other medical experts. *See Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)). "Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence." *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) (other citation omitted).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c).

Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Petrie v. Astrue*, 412 Fed. Appx. 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence

14

unpersuasive or insufficient to lead him to a conclusion of disability'") (quotation omitted); *Hudson v. Colvin*, No. 5:12-CV-0044, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence"), *report and recommendation adopted*, 2013 WL 1499956 (N.D.N.Y. Apr. 10, 2013). Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 74, 77 (2d Cir. 2012) (citations omitted).

A corollary to the treating physician rule is the "good reasons rule," which provides that the ALJ "will always give good reasons in [his or her] notice of determination or decision for the weight [he or she] give[s] [claimant's] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific . . . ." *Oakley v. Colvin*, No. 3:13-cv-679, 2015 WL 1097388, *9 (N.D.N.Y. Mar. 11, 2015) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). An ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Oakley*, 2015 WL 1097388, at *9 (quoting *Blakely*, 581 F.3d at 407) (internal marks omitted).

In the present matter, the ALJ chose to accord "great weight" to the entirety of consultative examiner Dr. Puri's opinion because Dr. Puri's opinion was consistent with the findings on physical examination and not inconsistent with the reports from treating medical providers. *See* Tr. at 34–35. The ALJ also chose to accord "great weight" to the entirety of consultative examiner

15

Dr. Sara Long's opinion because of Dr. Long's expertise, detailed report, and explanation of her findings. *See id.* at 35. The opinions of the consultative examiners are subject to the same evaluation as all medical opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(c). Thus, the ALJ is entitled to accept or reject those portions of these opinions based on the consistency of the opinion with the medical record. Upon review of the ALJ's decision, it is clear that the ALJ considered the level of support for the opinions of the consultative examiners, the consultative nature of the examination, and the consistency of that opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

Plaintiff argues that the ALJ erroneously failed to give controlling weight to the opinion of one of Plaintiff's longtime treating providers, Dr. Kuhar. *See* Dkt. No. 12 at 9. Failure to "provide good reasons for apparently affording no weight to the opinion of plaintiff's treating physician constitute[s] legal error." *Schall*, 134 F.3d at 505. When an ALJ considers the above enumerated factors along with conflicting evidence in the record, this is deemed to "provide substantial evidence for the ALJ's decision not to afford [a treating physician]'s opinion controlling weight." *Henry v. Astrue*, No. 09-CV-6476T, 2010 WL 2572945, *4 (W.D.N.Y. June 23, 2010) (citation omitted); *see also Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling"). Like in *Henry v. Astrue*, "[w]hile the ALJ did not explicitly state what weight he gave to [the treating physician]'s opinion it is evident that the ALJ did not give it controlling weight." *Henry*, 2010 WL 2572945, at *3; *see also Fox v. Colvin*, No. 5:12-cv-1902, 2014 WL 11350863, *4 (N.D.N.Y. Mar. 25, 2014) ("Although the ALJ did not explicitly state the weight he afforded [the treating physician]'s opinions, the ALJ's Decision clearly indicates that he

16

considered [the treating physician]'s opinions . . ., and clearly explained why, based on an evaluation of the record as a whole, [the treating physician]'s opinions were not accepted").

With regards to the opinion of Dr. Kuhar, the ALJ noted that "[t]he inconsistent information and histories provided by the claimant to his own treating physicians, as well as gaps in treatment, as noted above, further undermine his statements concerning the severity and persistence of his symptoms." Tr. at 38. The ALJ outlined these specific inconsistencies in detail, including: (1) Dr. Kuhar instructed Plaintiff on May 23, 2013 to continue work with Dr. Sokol on the use of a C-pap machine pending a surgery, while Plaintiff reported to Dr. Sokol on June 5, 2013 that Plaintiff "had been instructed by [Dr. Kuhar] not to use the CPAP[]" (*see* Tr. at 36, 479, 884); (2) Plaintiff advised Dr. Kuhar on December 16, 2015 that his three day electroencephalogram ("EEG") revealed that Plaintiff's "episodes out of sleep were related to drops in oxygen," while Plaintiff reported to Dr. Kuhar on January 22, 2016 that the same test revealed that Plaintiff "does not have a seizure disorder but severe sleepiness due to sleep deprivation" (*see* Tr. at 37, 784, 794); and (3) Plaintiff advised Andrew Larsen PA-C on August 8, 2017 that he used his C-pap machine every night, while Plaintiff reported to Dr. Kuhar on September 29, 2017 that he had not been using the machine[1] for the past several months (*see* Tr. at 37, 903, 910).

Accordingly, the Court finds that the ALJ sufficiently explained the basis for his conclusions as to Dr. Kuhar's medical opinion.[2]

---

[1] While these medical records refer to both an APAP and a CPAP machine, Plaintiff's medical records as a whole discuss the use of a CPAP machine only.

[2] In addition to the requirement of a showing of good cause, the Appeals Council will review new evidence submitted as part of the record if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the

(continued...)

17

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 4, 2019
Albany, New York

*Mae A. D'Agostino*
U.S. District Judge

---

[2](...continued)
additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996); *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). Where the Appeals Council denies review of the ALJ's decision after considering new evidence, the District Court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez*, 77 F.3d at 46. Here, Plaintiff submitted Dr. Kuhar's medical evidence source statements dated January 31, 2018 to March 22, 2018. *See* Tr. at 6, 17–23. The ALJ's decision, dated January 26, 2018, considered evidence in the record through December 31, 2016. *See* Tr. at 6, 27–40. Upon review, the newly submitted evidence from Dr. Kuhar does not relate to the period at issue, and cannot be considered by the Appeals Council under the applicable statute. *See* 20 C.F.R. § 404.970(a)(5).